UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANNIGAN LOONEY                                    CIVIL ACTION

VERSUS                                              No. 05-6491

POTASH CORPORATION d/b/a PCS                        SECTION: I/2
NITROGEN FERTILIZER, L.P., *et al.*

<u>**ORDER AND REASONS**</u>

Before the Court is a motion filed on behalf of plaintiff, Brannigan Looney, to remand this action to state court on the ground that federal jurisdiction does not exist.[1]  Additionally, plaintiff moves the Court to award costs and expenses incurred as a result of defendant's removal.  For the following reasons, plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

*Background*

Plaintiff was employed by defendant, PCS Nitrogen Fertilizer, L.P. (hereinafter "PCS" and incorrectly named as "Potash Corporation d/b/a PCS Nitrogen Fertilizer, L.P."), for more than six (6) years as a process operator.  Defendants, Samuel Juneau and Jeremy Richard, were his supervisors at the

---

[1] Rec. Doc. No. 12.

time of his alleged retaliatory termination for refusing to violate company policy, OSHA regulations, and Louisiana environmental laws.

On October 31, 2005, plaintiff filed this action in the 23rd Judicial District Court for the State of Louisiana, alleging state law claims against PCS, Juneau and Richard.  At the time this action was commenced and at the time of the filing of the notice of removal, plaintiff and defendants, Juneau and Richard, were citizens of Louisiana.

On December 14, 2005, PCS alone removed this action.  PCS asserts that the joinder of the non-diverse defendants, Juneau and Richard, was improper and that this action was correctly removed to federal court based on diversity jurisdiction.[2] Plaintiff counters that federal diversity jurisdiction does not exist over this matter because joinder of the non-diverse defendants was proper.

### *Law and Analysis*

### I. Improper, or Fraudulent, Joinder

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Smallwood v. Ill. Cent. R.R.,* 385

---

[2] It is undisputed that PCS is a citizen of Illinois and Delaware.

-2-

F.3d 568, 573 (5th Cir. 2004) (en banc).[3]  In *Smallwood v. Illinois Central Railroad*, the United States Court of Appeals for the Fifth Circuit restated the law with respect to the second method of establishing improper joinder:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.
>
> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law.  A court may resolve the issue in one of two ways.  The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.  That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.  In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)) (footnotes omitted).

The "burden of persuasion placed upon those who cry 'fraudulent [or improper] joinder' is indeed a heavy one."  *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

---

[3] The majority opinion in *Smallwood* adopted the term "improper joinder" in lieu of the term "fraudulent joinder."  *Smallwood*, 385 F.3d at 571 n.1.

-3-

In determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (quoting *B., Inc.,* 663 F.2d at 549).   The court must also resolve all ambiguities in the controlling state law in plaintiff's favor.   *Id.*

Plaintiff asserts that he was terminated in retaliation for refusing to sign a work permit in violation of company policy, OSHA regulations, and state environmental law.   In connection with his reprisal claim, plaintiff asserts claims of intentional infliction of emotional distress and negligence against the non-diverse defendants.   Plaintiff also argues that Juneau and Richards are solidarily liable with PCS pursuant to La. Rev. Stat. § 30:2027 and Louisiana Civil Code article 2315.

**A. Intentional Infliction of Emotional Distress**

PCS argues that plaintiff has no possibility of establishing an intentional infliction of emotional distress claim against the non-diverse defendants.   Under Louisiana law, a claim of intentional infliction of emotional distress contains three elements:   (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress of the plaintiff was severe; and (3) that the defendant desired to inflict severe

-4-

emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

In order to state an intentional infliction of emotional distress claim, the defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* "[D]isciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *Id.* at 1210.

Louisiana courts have upheld intentional infliction of emotional distress claims in workplace situations, but such cases have typically been limited to those involving a pattern of deliberate, repeated harassment over a period of time. *See id.* at 1207 (stating that plaintiff's status as an employee may entitled him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger); *Walter v. Rubicon, Inc.*, 706 So. 2d 503, 507 (La. App. 1st Cir. 1997) (holding that an employee's allegations were sufficient to state a claim for intentional infliction of emotional distress against his employer and supervisors where he

-5-

stated that his supervisor continuously cursed him, screamed at him, threatened him, that supervisors ordered him to perform or ignore policies and procedures which he believed to be illegal or in violation of agency regulations, that his supervisor's superiors ignored his complaints, and that this caused him to suffer physical symptoms and stress-induced injuries).

In his petition, plaintiff alleges that he was harassed over a number of years by defendants, Juneau and Richard. Plaintiff states that the defendants' "constant intemperance," such as imposing onerous duties (*e.g.*, scooping sludge with a shovel in an eight (8) foot pit, forcing him to stay longer hours, and targeting him with monthly "random" drug screens) made the workplace unbearable.[4] In addition, plaintiff claims that after he refused to issue a permit in violation of OSHA regulations, Juneau and Richard executed a fraudulent disciplinary action document claiming that plaintiff had not taken certain readings and that plaintiff intentionally falsified UAN storage tank measurements.[5] Finally, plaintiff alleges that defendants intentionally sought to make the workplace unbearable throughout the duration of his employment and that he "suffered extreme physical, emotional and mental distress" as a result.[6]

---

[4] *Id.* at ¶¶ 18, 23, and 24.

[5] *Id.* at ¶ 18.

[6] Id. at ¶¶ 23 and 24.

Taking all of plaintiffs allegations as true, the Court finds that plaintiff may have a possibility of recovery against the non-diverse defendants based on an intentional infliction of emotional distress cause of action.  In this case, the alleged workplace behavior was not limited to an isolated event but rather occurred over a number of years.  Plaintiff was also purportedly ordered to violate the law and after refusing, he was then terminated.  Plaintiff was also allegedly required to perform tasks, such as scooping sludge from a pit, which were allegedly not within his job description.  Moreover, the Court cannot find that plaintiff's allegations do not rise to the threshold level of extreme and outrageous conduct required for an intentional infliction of emotional distress claim.  *See Channey v. Home Depot, USA, Inc.*, No. 99-1792, 1999 WL 649633, at *2-3 (E.D. La. Aug. 24, 1999) (finding that plaintiff had adequately plead facts to set forth a cause of action for intentional infliction of emotional distress); *cf. Washington v. Mother Works, Inc.*, 197 F. Supp. 2d 569, 572-74 (E.D. La. 2002) (finding the plaintiff's allegations of intentional infliction of emotional distress insufficient under existing Louisiana law).

While the Court makes no prediction as to whether plaintiff will actually prevail on the merits of his intentional infliction of emotional distress claim, the Court finds that plaintiff's allegations state a cause of action against the non-diverse

defendants such that there is incomplete diversity.  Accordingly, federal jurisdiction is lacking and this case must be remanded to state court.[7]

## II. Motion for Costs and Expenses

Title 28, United States Code, section 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  In applying section 1447(c), "[t]he matter is left to the court's discretion, to be exercised based on the nature of the removal and the nature of the remand."  *Garcia v. Amfels, Inc.*, 254 F.3d 585, 587 n.2 (citing David D. Siegel, Commentary on 1988 Revision to 28 U.S.C. § 1447 (West Supp. 1993)).  However, an improper removal does not mandate an award of fees and costs.  *See Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000)).  "Fees should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'"  *Id.* Because defendant's removal of this matter was not lacking objectively reasonable grounds, the Court will decline to award costs, attorney fees, or other expenses to plaintiff.

---

[7] In view of the finding that plaintiff's intentional infliction of emotional distress claim may be viable, the Court need not address plaintiff's negligence, negligence per se, or solidary liability claims for the purpose of this motion to remand.

Accordingly,

For the above and foregoing reasons, **IT IS ORDERED** that the motion for remand of plaintiff, Brannigan Looney, is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause shall be **REMANDED** to the 23rd Judicial District Court, Assumption Parish, Louisiana.

**IT IS FURTHER ORDERED** that plaintiff's motion for costs and expenses pursuant to 28 U.S.C. § 1447(c) is **DENIED.**

New Orleans, Louisiana, March __28th__, 2006.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**